# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 1:24-cr-231 |
| ) | |
| Plaintiff, ) | Judge J. Philip Calabrese |
| ) | |
| v. ) | |
| ) | |
| CHARIECE CHEW, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## OPINION AND ORDER

Defendant Chariece Chew seeks review of the order of detention that the Magistrate Judge issued in this case on July 25, 2024.

## ANALYSIS

District courts review a magistrate judge's release or detention order de novo. *United States v. Tripplett*, No. 1:19-cr-700, 2020 WL 6702118, at *1 (N.D. Ohio Nov. 13, 2020) (citing *United States v. Alexander*, 742 F. Supp. 421, 423 (N.D. Ohio 1990)). On review, the district court engages "in the same analysis, with the same options, under § 3142 as the magistrate judge." *United States v. Yamini*, 91 F. Supp. 2d 1125, 1129 (S.D. Ohio 2000) (citing *United States v. Maull*, 773 F.2d 1479, 1482 (8th Cir. 1985)).

Under the Bail Reform Act, "a defendant may be detained pending trial only if a judicial officer 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]'" *United States v. Stone*, 608 F.3d 939, 947 (6th Cir. 2010)

(quoting 18 U.S.C. § 3142(e)). Accordingly, consistent with the Constitution's protection of liberty and the presumption of innocence, federal law favors release.

## BACKGROUND

On June 26, 2024, a grand jury returned a four-count indictment charging Defendant Chariece Chew with certain gun offenses. (ECF No. 3.) Specifically, Count 1 and Count 2 charge that, on February 22, 2024, Mr. Chew, who was previously convicted of a felony and therefore barred from possessing a firearm, participated in a straw purchase of two pistols. (*Id.*, PageID #11–12.) Count 3 and Count 4 bring similar charges regarding a transaction on February 29, 2024. (*Id.*, PageID #12–13.) Defendant contends that he resides in California with his wife and mother caring for his three children, two of whom have serious health issues and one of whom has attention deficit disorder, and did not travel to Akron, Ohio where the straw purchases allegedly occurred. (ECF No. 22, PageID #114.) He maintains that the charges stem from a case of mistaken identity. (*Id.*)

### I. Risk of Flight and Safety of Others

The United States bears the burden of proving that detention is warranted. To carry its burden, the United States must prove either (1) by a preponderance of the evidence, that Mr. Chew poses a risk of flight, *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004); or (2) by clear and convincing evidence, that he poses a risk to the safety of others and the community, *Stone*, 608 F.3d at 946 (citing 18 U.S.C. § 3142(f)(2)(B)). The United States contends that it can carry its burden under each of these prongs of the analysis. Because the record shows, by clear and convincing evidence, that Mr. Chew poses a risk to the safety of the community, the Court need

2

not consider the risk of flight or non-appearance under the lower preponderance standard.

Here, Mr. Chew has a prior conviction in 2017, when he was twenty-two years old, in California State court for assault with a deadly weapon with force and possible great bodily injury. (ECF No. 8, PageID #37.) With this violent offense alone, the United States carries its burden to show that Mr. Chew poses a risk to the safety of the community. Consideration of Mr. Chew's more recent federal conviction in 2018 for distribution of methamphetamine confirms that finding. After all, Congress provided for a presumption in favor of detention where a defendant is charged with drug crimes. Defendant argues that the time he spent in prison changed him and that he no longer is the person who committed those offenses. In the Court's view, this argument is best addressed in determining whether there is a condition or combination of conditions that will ensure the safety of the community.

## II. The Factors Under Section 3142

In determining whether there are conditions of release that will reasonably assure Mr. Chew's appearance and the safety of others and the community, the Court reviews the record in light of the factors listed in 18 U.S.C. § 3142(g): (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." To order detention under Section 3142(e) requires proof by clear and convincing evidence. 18 U.S.C. § 3142(f); *Yamini*, 91 F. Supp. 2d at 1127.

3

### II.A. Nature and Circumstances of the Offense Charged

The first factor considers whether the offense charged is a crime of violence, has a minor victim, or involves a controlled substance. 18 U.S.C. § 3142(g)(1). The offenses charged, two straw purchase counts and two felon-in-possession counts, do not carry a presumption in favor of detention. The charges do not allege that Mr. Chew used the pistols at issue or that the pistols made their way into the hands of those who used them. Strictly, then, these offenses are not violent. However, by allegedly participating in transactions that put high-powered pistols into the hands of a convicted felon who may not possess them, using means that circumvent the normal controls intended to ensure that firearms do not find their way into the possession of those who should not possess them, the offenses at issue do threaten to contribute to the problem of gun violence generally, and in the City of Akron in particular.

### II.B. Weight of the Evidence

"This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt" and is not a pretrial determination of guilt. *Stone*, 608 F.3d at 948. As noted, Mr. Chew's criminal record contains a conviction for a violent offense in State court, which resulted in a sentence of 369 days in prison, as well as a federal conviction for distribution and possession with intent to distribute methamphetamine. For the federal offense, Mr. Chew received a sentence of 69 months in the Northern District of California, followed by four years of supervised release. On June 22, 2022, Mr. Chew began his term of supervised release.

4

Against this evidence, Mr. Chew argues that his time in prison on these charges, resulting from convictions in his twenties, changed him.  He presents about a dozen character references and notes in his argument that he has not had violations on supervision other than this case.  (Although Mr. Chew was charged with driving under the influence in June 2024 (*see* ECF No. 8, PageID #39), that charge appears to have been dropped.)  Further, the record shows that he has earned money through lawful employment to support himself and his family.

As addressed at the hearing, the Court is mindful that Mr. Chew's criminal history came in his early twenties.  As he points out, since then and since his time in prison, he has led a much more law-abiding life.  Setting aside the charges in this case, his roughly two years of better behavior stands in contrast to about seven years of serious criminal activity before the age of twenty-five.  On balance, the Court finds that the evidence of dangerousness Mr. Chew's criminal history evinces outweighs the contrary evidence and character references he submitted, at least at the present time.  That does *not* mean that he has not changed—just that, when it comes to assuring the safety of the community, the public may rightly expect a longer track record of compliance and lawful behavior in light of Mr. Chew's criminal history.

Still, this factor requires the Court to consider whether there are conditions that can address the risk of danger to the community that pretrial release would pose.  At the hearing, Defendant pointed to home detention with GPS monitoring as such a condition.  The difficulty is that home detention allows work release.  Indeed, allowing Mr. Chew to work to support his family is one argument he makes in favor of this

condition. But work release makes monitoring his whereabouts difficult as he commutes to and from work, makes the occasional stop for groceries or the like, or otherwise goes about even the mundane but lawful tasks of everyday life. That feature of GPS monitoring does little to assure the community such a condition addresses the degree of dangerousness the record shows.

For these reasons, though the question is quite close, the Court finds that this factor favors detention.

### II.C. History and Characteristics of the Person

The history and characteristics of a defendant include "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). Additionally, they include whether the defendant was on probation or parole at the time he committed the offense. *Id*. § 3142(g)(3)(B).

The Court already noted Mr. Chew's criminal history and the fact that he was on supervision at the time of the charges in this case. Therefore, the Court will not double count these facts in the analysis. Beyond that, Mr. Chew's character references, particularly the letter from his mother, Rosalind Watts-Chew, describe a difficult and traumatic upbringing. As a young child, Mr. Chew experienced the death of his grandmother and father, with whom he was close. He sustained serious head injuries in a car accident.

Additionally, Mr. Chew is married and has three young children—two of whom have serious health issues, and the third has a disability. Based on these facts, the record shows that Mr. Chew is dealing with significant and difficult issues at home as he returns to society following his federal drug conviction, which carries collateral consequences for him. These facts show that Mr. Chew is needed at home and also suggest that he faces strong pressures and temptations to return to his previous life either to provide for those depending on him or out of stress or habit. Those temptations underscore the need for sufficient protections for the community.

**II.D. Nature and Seriousness of the Danger Release Poses**

Under 18 U.S.C. § 3142(g)(4), the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." According to the investigation giving rise to this case, Mr. Chew traveled from California to Akron, Ohio to acquire a total of four pistols, which are apparently difficult to obtain in California, based on online communications to acquire the pistols at issue.

Defendant contends that the charges result from a case of mistaken identity. He notes that the United States has not recovered the pistols or any other firearms in connection with this case. Further, a confidential informant identified him and supplies the facts relating to the purchases of the pistols at issue. Defendant challenges his identification by the confidential informant, pointing out that she gets wrong the height of the person for whom the pistols were purchased and describes that person as having a distinctive tattoo on his belly and chest, which his does not match. But the confidential informant describes the purchaser as having visible

7

tattoos, as Mr. Chew does, even if she is wrong about what they said. And the height is off, though arguably close. These and other issues with Mr. Chew's identification go to the weight of the evidence for a jury to consider, and the Court has not relied on these facts in evaluating whether the United States carries its burden in this detention proceeding.

In any event, beyond this disputed eyewitness identification, the United States bases its case on cell phone records (for a number with an area code in California where Mr. Chew lives) and social media pictures of Mr. Chew that match the identify of the person with the confidential informant when the pistols were purchased. Additionally, cell phone data ties the number at issue to Mr. Chew's residence in California and traces his movement across the country to Akron, Ohio. Of course, there might be explanations other than Mr. Chew's involvement in the straw purchases at issue that account for these alleged facts. At this stage of the proceedings, however, the record establishes a sufficient risk that Mr. Chew presents a danger of introducing into the community firearms that should not be there.

## CONCLUSION

For all these reasons, on de novo review of the record, the Court finds that the factors in 18 U.S.C. § 3142, considered individually and collectively, weigh in favor of detention pending trial in this case. The Court finds that no condition or combination of conditions will reasonably assure the safety of the community in light of the danger Mr. Chew's release would pose. In making this determination, the Court notes the closeness of the question and emphasizes that a ruling on detention is *not* a pretrial determination of guilt or innocence and expresses no view on the question whether

the record will allow the United States to carry its burden of proof beyond a reasonable doubt.  Further, the Court recognizes that Mr. Chew enjoys a presumption of innocence and has endeavored to review the record and the parties' competing views of the facts in that light.

    **SO ORDERED.**

Dated:  January 2, 2025

                          J. Philip Calabrese
                          United States District Judge
                          Northern District of Ohio